# Ca'ryna Bowman

## v.

# Mayflower Transit, LLC

# Exhibit A

## to

# Notice of Removal

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
(TORT) — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

# COMMONWEALTH OF MASSACHUSETTS

.......... MIDDLESEX .......... , ss

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 11-02000-L



Ca'ryna Bowman
.......................................... , Plaintiff(s)

v.

Mayflower Transit
.......................................... , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon ... Justin St. James
.......................................... plaintiff's attorney, whose address is P.O. Box 5096, Andover, Massachusetts, 01810-0823
.......................................... , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Middlesex County
.......................................... either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at 200 Trade Center, Woburn, MA, 01801
the 13th .......................................... day of June .......................................... , in the year of our Lord 2011 ..........

A true copy Attest:
6/20/2011

Deputy Sheriff Suffolk County

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

RM NO. SUP. — 001

Commonwealth of Massachusetts
County of Middlesex
The Superior Court

CIVIL DOCKET # MICV2011-02000
Courtroom Civil L CrtRm (Lowel

RE: Bowman v Mayflower Transit, LLC
TO:

Justin St.James, Esquire
The Law Office Of Justin St.Jame
P.O. Box 5096
Andover, MA 01810

## SCHEDULING ORDER FOR F TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue 03/28/2013.

| STAGES OF LITIGATION | DEADLINES | | |
|---|---|---|---|
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | 09/05/2011 | 09/05/2011 | |
| Response to the complaint filed (also see MRCP 12) | | 09/05/2011 | |
| All motions under MRCP 12, 19, and 20 | | 10/05/2011 | |
| All motions under MRCP 15 | 10/05/2011 | 11/04/2011 | 12/04/2011 |
| All discovery requests and depositions served and non-expert depositions completed | 10/05/2011 04/02/2012 | 11/04/2011 | 12/04/2011 |
| All motions under MRCP 56 | 05/02/2012 | 06/01/2012 | |
| Final pre-trial conference held and/or firm trial date set | | | 09/29/2012 |
| Case shall be resolved and judgment shall issue by **03/28/2013** | | | 03/28/2013 |

- The final pre-trial deadline is not the scheduled date of the conference.
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 06/08/2011

Telephone: 978-453-0201

Michael A. Sullivan
Clerk of the Court

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT COUNTY OF Middlesex / Lowell | DOCKET NO. |

**PLAINTIFF(S)**
Ca'ryna Bowman

**DEFENDANT(S)**
Mayflower Transit, L.L.C.

Plaintiff Atty Justin St.James / Law Office of

Address P.O. Box 5096

City Andover  State MA  Zip Code 01810-0823

Tel. 978-689-5200  BBO# 674334

Type Defendant's Attorney Name

Defendant Atty Wesley Chused / Looney & Grossman

Address 101 Arch Street

City Boston  State MA  Zip Code 02110-1112

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
| B04 | Consumer Protection | (F) | ● ] Yes  ⌒ ] No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
    1.  Total hospital expenses                                        $
    2.  Total doctor expenses                                          $
    3.  Total chiropractic expenses                                    $
    4.  Total physical therapy expenses                                $
    5.  Total other expenses (describe)                                $
B.  Documented lost wages and compensation to date                     $
C.  Documented property damages to date                     Subtotal   $
D.  Reasonably anticipated future medical expenses                     $
E.  Reasonably anticipated lost wages and compensation to date         $ 50,000.00
F.  Other documented items of damages (describe)                       $
G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)   $
    Plaintiff suffered loss and damage of her personal property
    by Defendant moving company's negligence, breach of contract,
    and violation of applicable laws.

                                                            Total $  50,000.00

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
JUN 07 2011
CLERK

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

                                                            TOTAL  $...............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

AI hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record

A.O.S.C. 3-2007                                             Date: June 7, 2011

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss**                                    **LOWELL SUPERIOR COURT**
**CIVIL ACTION**

Ca'ryna Bowman,
Plaintiff,

v.



Mayflower Transit, LLC
Defendant

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

This is an action under Massachusetts General Laws Chapter 93A for damages caused directly and indirectly by the Defendant moving company while under contract with the Plaintiff.

The Plaintiff, Ca'ryna Bowman, by her attorney, Justin St.James, complaining of the Defendant, Mayflower Transit, L.L.C., respectfully allege as follows:

## PARTIES

1. The Plaintiff, Ca'ryna Bowman, is an individual residing at 3 Julio Street, Chelmsford, Middlesex County, Massachusetts, 01824.

2. The Defendant, Mayflower Transit, LLC, is a national and international moving company with headquarters in Fenton, Missouri 63026 and business offices in Nashua, New Hampshire 03062 and Lowell, Massachusetts, 01852.

## FACTS

3. The Plaintiff, Ca'ryna Bowman, repeats and re-alleges Paragraphs 1 through 2 above, and incorporates them herein by reference.

4. On or about May 27, 2008, Ca'ryna Bowman (hereinafter "Plaintiff,") paid in full, using her credit card, the amount charged by Mayflower Transit (hereinafter "Defendant,") eight thousand eight hundred eighty dollars and sixteen cents ($8,880.16) as stated on the Parties' contract, for the Defendant's moving services. The payment-in-full was made to Defendant's agent, "Blue Chip Moving and Storage," 1629 Cosmo Street, Los Angeles, California 90028.

5. The Plaintiff paid $8,880.16 for the experienced, professional moving services of Defendant to load Plaintiff's personal property into one of Defendant's moving vans, transport said property across country in a professional and safe manner, and unload the Plaintiff's property with care at two designated destinations: (a) a public storage facility in Nashua, New Hampshire, rented and reserved by and for Plaintiff for the purpose

of safekeeping some of her property, and  (b) Plaintiff's new residence in Chelmsford, Massachusetts.

6.  On or about May 30, 2008, one of Defendant's moving trucks arrived at Plaintiff's North Hollywood, California residence to load and move Plaintiff's personal belongings across country.

7.  The Defendant's truck arrived at the Plaintiff's California residence two hours late from the time designated by the moving company, and partially loaded with property (presumably) of that from another of the Defendant's customers.  Defendant's moving van driver (hereinafter "Driver,") stated to Plaintiff that it would take two days to properly load Plaintiff's property into the moving van.  Driver further stated that he was not informed by the Defendant:  (a) that he was to arrive at Plaintiff's residence with an empty moving van, and (b) the total quantity of Plaintiff's property to be moved. Defendant's agent, Blue Chip Moving and Storage, previously stated to Plaintiff that it would take only one day to properly load the moving van with Plaintiff's belongings.

8.  Before leaving Plaintiff's California residence, Driver assured Plaintiff that he would have Plaintiff's property completely unloaded in two days; the first day at the Nashua storage facility, and the second day at Plaintiff's Chelmsford residence.

9.  On or about June 8, 2008, the Defendant's truck arrived at the Plaintiff's first designated destination, Nashua New Hampshire, to unload some of the Plaintiff's property. The Plaintiff learned for the first time that only one day had been allocated by the Defendant for delivering all of Plaintiff's property to both the Nashua, New Hampshire and Chelmsford, Massachusetts destinations. Plaintiff also discovered that several of her belongings were either missing from the van or had been smashed in transit.

10. At the Nashua storage facility, the Defendant did not provide the two experienced, professional movers to unload the van that the Plaintiff had bargained for. Driver called one of the Defendant's contact telephone numbers and was told that the two scheduled movers for the job did not show up for work that day, and no one else was available to replace them. The Plaintiff then asked to speak with Driver's contact, and Plaintiff was advised by that contact, via Driver, to telephone Defendant's customer service office. Plaintiff made multiple phone calls to Defendant's customer service office, each time leaving messages about her need for experienced, professional movers to arrive at the Nashua facility. No one from Defendant's customer service office returned Plaintiff's messages.

11. The Driver informed the Plaintiff that he was expected to leave the state that evening for his next moving job, and told the Plaintiff that he would

either: (a) take the Plaintiff's belongings with him in the moving van or (b) unload the Plaintiff's belongings in front of the Nashua storage facility's entrance before leaving for his next assignment.

12. Eventually, an 18-year old young man named Ryan Briard (hereinafter "Ryan,") appeared wearing a shirt with the Defendant's "Mayflower" logo. Ryan had worked one previous moving job for the Defendant. In order to help him unload the van and carry the Plaintiff's property into the Nashua storage facility, Ryan made telephone inquiries and two of his friends, who were not employed by the Defendant or any other moving company, came to the facility. One of Ryan's friends quit around noontime; the other worked until 5:00 pm. Ryan and his friend(s) placed light boxes clearly labeled "Fragile" on the storage facility's floor, and set heavier boxes on top of them. The Plaintiff pointed out to Ryan and his friend(s) the correct way to store her property, however the young men were inconsistent in following Plaintiff's directions. Plaintiff was forced to constantly correct their errors. Plaintiff also had to physically carry much of her own property from the moving van into the storage facility and re-stack the boxes.

13. During the unloading of Plaintiff's property at the storage facility, Driver refused to assist in carrying items and boxes into the storage facility, stating that his job consisted only of removing Plaintiff's belongings from the moving van. Driver also refused to instruct or supervise Ryan and his

friend(s) because, as Driver also stated, it was not part of his job description.

14. By approximately 8:00 pm., the Plaintiff's property designated for the Nashua storage facility was completely unloaded.

15. The Defendant's moving van then arrived at the Plaintiff's residence in Chelmsford.   Ryan again made telephone inquiries and two different friends of his, who were not employed by the Defendant or any other moving company, appeared and helped unload and move the Plaintiff's belongings into her home.  The Plaintiff was again required to supervise the young men throughout the process, and move many of the boxes and items herself.

16. Due to the evening hour, Driver's obligation to travel on to an out-of-state job, and the Defendant's failure to provide experienced, professional movers, Plaintiff was not afforded a reasonable time to inspect any of her personal property for specific damages, both at her Chelmsford, Massachusetts residence and the Nashua storage facility.   However, Plaintiff did discover that several of her items were either missing or damaged, including her "high value items."

17. Plaintiff spent approximately 15 hours personally moving her property, and instructing and supervising Ryan and his friends at both the Nashua, New Hampshire and Chelmsford, Massachusetts locations.

18. The Driver had Plaintiff sign a slip of paper that Driver stated was proof he delivered Plaintiff's personal property. However, Driver did not give Plaintiff a copy of the signed paper, stating that a copy would be mailed to Plaintiff from the Defendant's corporate office shortly thereafter. Plaintiff has not received such copy, or a completed bill of lading, despite requesting so in her March 4, 2009 formal complaint letter to the Defendant

19. After the cross-country move of Plaintiff's property was completed, Plaintiff again attempted to contact Defendant's customer service office multiple times and over an extended period of time; leaving messages during each of her attempts. Defendant's customer service office did not return any of Plaintiff's calls.

20. On or about March 4, 2009, Plaintiff wrote and sent via U.S. Express Mail a formal, detailed complaint letter to Defendant's President at the company's corporate office. Plaintiff's letter stated with particularity that Defendant failed to provide the professional services and expertise she had bargained for, the injuries she sustained due to the Defendant's

negligence, and her expected restitution. [Annexed hereto as **Exhibit A** is a copy of Plaintiff's March 4, 2009 letter.]

21. At no time did Defendant acknowledge or attempt to remedy its failure to completely fulfill its obligation to the Plaintiff. Following receipt of Plaintiff's March 4, 2009 letter, the Defendant contacted Plaintiff concerning only Plaintiff's personal property loss and damages. Plaintiff's efforts for a fair resolution for all of her property loss and damages were unfruitful.

22. On or about May 4, 2011, Plaintiff wrote and sent via U.S. Express Mail a M.G.L. c. 93A Demand Letter to the Defendant's President, which also included a copy of Plaintiff's March 4, 2009 letter.

23. On or about June 4, 2011, Defendant responded to Plaintiff's Demand Letter, denying the majority of Plaintiff's claims, and offering Plaintiff two thousand, seventy-eight dollars and ninety-six cents ($2,078.96.) Plaintiff does not consider Defendant's offer to be a good faith settlement offer. [Annexed hereto as **Exhibit B** is a copy of the Plaintiff's Demand Letter, and as **Exhibit C** is a copy of Defendant's settlement offer.]

24. Pursuant to Defendant's advertising, the Defendant claims that "Mayflower Transit has been moving families around the country and across towns since 1927 with great care and expertise." And, "With

Mayflower Transit, you can depend on quality service that's unsurpassed in the moving industry." And, "Mayflower takes pride in its quality service pledge."

## COUNT I

### CONVERSION

25. The Plaintiff repeats and re-alleges paragraphs 1 through 24 above and incorporates them herein by reference.

26. The Defendant damaged or lost many of the Plaintiff's personal belongings while transporting the Plaintiff's property cross-country; depriving the Plaintiff further use of her property.

## COUNT II

### NEGLIGENCE

27. The Plaintiff repeats and re-alleges paragraphs 1 through 26 above and incorporates them herein by reference.

28. The Defendant damaged or lost many of the Plaintiff's personal belongings, either in transit or while loading or unloading her property, requiring the Plaintiff to have her property repaired or replaced.

## COUNT III

BREACH OF CONTRACT

29. The Plaintiff repeats and re-alleges paragraphs 1 through 28 above and incorporates them herein by reference.

30. The Plaintiff at all times performed in accordance with the terms under the Parties' signed agreement.

31. The Defendant knowingly and willfully breached the terms of the Parties' contract when it: (a) arrived two hours late to the Plaintiff's California residence, (b) failed to use reasonable care when transporting Plaintiff's property cross-country, resulting in damage and loss of Plaintiff's property, (c) failed to supply a sufficient number of experienced and professional movers to help unload Plaintiff's property from the moving van, resulting in delay, loss and damage to Plaintiff's property, (d) failed to allow Plaintiff sufficient time necessary for moving and inspection, changing without notice the number of days from two (as promised by Driver, an agent acting for Defendant) to one day, which hindered detection of damage and loss, and caused actual damage and loss, and (e) failed to return Plaintiff's telephone messages. The Plaintiff's calls concerned problems that arose during the move, and attempts afterward to resolve the Plaintiff's property damage and loss.

## COUNT IV

### FALSE ADVERTISING

32. The Plaintiff repeats and re-alleges paragraphs 1 through 31 above and incorporates them herein by reference.

33. Defendant knowingly and willfully contravened its advertising claims by failing to provide adequate and experienced, professional movers, causing damage to Plaintiff's personally property, and failing to communicate with Plaintiff after her repeated attempts to contact Defendant during and after the cross-country move. Defendant's customer service department did not follow standard business practices by inquiring whether Plaintiff was satisfied with Defendant's quality of performance.

## COUNT V

### VIOLATION OF UNITED STATES CODE
### TITLE 49 SUB IVB CH. 147 SEC. 14706
### AND CODE OF FEDERAL REGULATIONS TITLE 49, Part 375

34. The Plaintiff repeats and re-alleges paragraphs 1 through 33 above and incorporates them herein by reference.

35. The Defendant violated Federal law by: (a) transporting and moving Plaintiff's personal property, including household goods, in such a way

that caused said property to be either lost or damaged, (b) knowingly and willingly failing to adhere to established federal procedure by not providing experienced and professional movers per the Parties' agreement, (c) knowingly and willingly failing to adhere to established federal procedure by not providing a completed bill of lading to the Plaintiff, and (d) knowingly and willingly failing to adhere to federal procedure by not addressing Plaintiff's May 4, 2011 formal complaint in its entirety. In its June 4, 2011 response, Defendant repeatedly states that Plaintiff's claims were denied because the nine month filing period expired on March 9, 2009, and Defendant did not receive Plaintiff's claim until April 15, 2009. However, Plaintiff mailed her initial complaint to Defendant on March 4, 2009 via U.S. Express Mail.

## COUNT VI

### VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT, M.G.L. c. 93A

36. The Plaintiff repeats and re-alleges paragraphs 1 through 35 above and incorporates them herein by reference.

37. The Defendant employed unfair and deceptive acts and practices by accepting payment in full from the Plaintiff for its moving services and then knowingly and willfully refusing to meet its contractual obligations in violation of M.G.L. c.93A, sections 2 and 9 as follows: (a) by transporting

and moving Plaintiff's personal property in such a way that caused said property to either be lost or damaged, (b) by not returning Plaintiff's numerous telephone calls, (c) by failing to remedy the Plaintiff's formal complaint, (d) by failing to comply with the federal regulations governing motor carriers for the transport of household goods and liability of carriers under receipts and bills of lading, and (e) by failing to make a good faith settlement offer.

**Wherefore,** the Plaintiff, Ca'ryna Bowman, requests that this Honorable Court grant her the following relief:

A. Judgment be entered in favor of the Plaintiff, Ca'ryna Bowman, under Count I - VI of this Complaint;

B. Damages be awarded to the Plaintiff, Ca'ryna Bowman, in an amount to be determined, plus attorney's fees and costs;

C. The Plaintiff, Ca'ryna Bowman, be granted treble damages, and other such relief as is fair and equitable.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Respectfully submitted,

PLAINTIFF, Ca'ryna Bowman

By her attorney.

Date:   June 7, 2011

Justin St.James, Esq.
BBO# 674334
Law Office of Justin St.James
P.O. Box 5096
Andover, MA.  01810-0823
978-689-5200
jstjames@stjames-legal.com

EXHIBIT A

March 4, 2009

Mr. Pat Larch, President
Mayflower Transit, LLC
One Mayflower Drive
Fenton, MO 63026

Dear Mr. Larch,

This letter is a formal complaint for services not rendered and the ensuing consequences, and a request for full restitution from Mayflower Transit, LLC ("Mayflower"). Please note, I paid for the Mayflower professional services and expertise for moving my household cross-country in full prior to commencement of the move by credit card. Briefly, Mayflower was hired for its professional services and expertise in moving households, and in my case from California to New England. This service was fully paid for in advance, the professional services and expertise were not rendered, and I am due full restitution for: failure to render full service; my furniture was scratched, marred, and gouged; I sustained a significant injury due to Mayflower's failure to provide professional services and expertise, which I am still recovering from; medical costs for treatment of the injury, still on-going; and, continuing loss of ability to work and loss of income due to said injury.

You may be wondering why I am writing to you instead of going through customer service. This is because your customer service has refused to return my multitude of calls, as only the voice mail was reached, to address the failure of service I encountered.

Mayflower was hired to provide professional services and expertise to move my household from North Hollywood, California to Chelmsford, Massachusetts, which entailed two destinations: storage unit in Nashua, New Hampshire and residence in Chelmsford, Massachusetts. Due to my initial location, your booking agent was used to coordinate the move: Blue Chip Moving and Storage, 1629 Cosmo Street, Los Angeles, California 90028, (213) 463-2134. I had called Blue Chip Moving and Storage first to inform them of the failure of service, and they never responded.

INITIAL LOCATION: North Hollywood, California 91602—May 30, 2008
                  4749 Denny Ave. #7
                  Townhouse of 1200 sq. ft.

The driver arrived with a Mayflower moving truck two hours late, the two professional movers arrived on time at 7:00 AM. During the whole day, the driver and the two professional movers did a really good job of moving my personal belongings from the townhouse to the Mayflower truck.

The driver stated that there would not be enough room in his partially loaded truck, and that Mayflower improperly informed him as to the capacity of the truck load. He said he

should have come with an empty truck for the move. He said he would do the best he could, and to be prepared for the possibility of the necessity for a second truck. Of course, this increased the already stressful situation, especially since flight plans were fixed for the afternoon of May 31st, and the cleaning crew for the townhouse was already set up which had to be rescheduled due to the two hour delay of the truck's arrival.

Mayflower told me that due to the size of my townhouse, it was only a one day job to load. The driver told me that this should be a two day load job to do it right, and then assured me that two unloading days would be provided at the destination locations. The first day of unloading would occur at the storage unit in Nashua, New Hampshire, and the second day of unloading would occur at the residence in Chelmsford, Massachusetts. Mayflower told me that it is the driver's job to determine how many days it would take to properly unload the truck. The driver determined that it would take two days to unload my personal belongings at the two destination locations. However, this did not occur as explicitly stated. Only one day was allotted to unload at both locations because Mayflower knowingly double booked the driver. I cannot help but believe that the driver was double booked because I had already provided full payment. This is extremely unprofessional and a failure to provide the professional services and expertise for which Mayflower was hired.

During the load of the truck, I attempted to locate a few specific items, and the driver said that the items must be further back in the truck and he couldn't get to it. This sounded plausible at the time, however upon arrival at the destination locations there were many items that were missing as well as damage to a multitude of items. In addition, although each item was tagged with an inventory number, an inventory list was not made. This is extremely unprofessional and a failure to provide the professional services and expertise for which Mayflower was hired.

For a household move, Mayflower advertises the following:

"Mayflower Transit has been moving families around the country and across towns since 1927 with great care and expertise."

"With Mayflower Transit, you can depend on quality service that's unsurpassed in the moving industry" and "Mayflower takes pride in its quality service pledge."

Unfortunately, what I experienced was not done with "great care and expertise" and was not "quality service."

DESTINATION #1: Nashua, New Hampshire—June 8, 2008
                          Public Storage
                          1600 Southwood Drive

Upon arrival, I learned that only one day was allotted to unload my personal belongings

2

at both locations. I placed several calls to the contact number given to me, with no response. The driver determined that it would take two days to properly unload my personal belongings, as it was his job to do, and Mayflower knowingly compromised his professional determination when Mayflower knowingly double booked him, and consequently placed my personal belongings in jeopardy. I can only conclude that the driver was deliberately double booked because I had already provided Mayflower with full payment in advance. This is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

Upon arrival, the same driver was present, however, no professional movers were provided to unload my personal belongings, because the two professional movers who were scheduled for the job failed to show up to the job. Mayflower then failed to provide qualified professional movers as replacements for them. This is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

One boy of eighteen was presented as a professional mover for Mayflower, however he had only one previous job with Mayflower, and was not properly trained on how to move personal belongings. The eighteen year-old boy did not even have the common sense to place the heavier boxes on the bottom with the lighter boxes on top. Once I pointed this out to him, he was inconsistent in following through with the correct manner, he failed to pay proper attention as he was preoccupied with a personal situation. He clearly was not trained, I had to continually watch him and correct his mistakes in order to protect my personal belongings, and, therefore, he clearly does not qualify as a professional mover. This is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

The driver said it was not his job to supervise the movers, he only unloaded the truck, and did not provide even basic supervision of this eighteen year-old boy nor give him basic instruction. Given the circumstances, this is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

When I was informed that no "professional movers" were available to unload the truck, both the driver and the eighteen year-old boy called Mayflower and they were told that no one is available. The driver said that he had to leave with that truck at the end of the day, he could not leave the truck, and that he could either take all my personal belongings with him on the truck (he had to leave the state) or unload them all in front of the entrance to the temperature controlled storage building. Of course, this day was a very sunny, over 90 degrees and very humid day. This is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

Since the eighteen year-old boy was unable to move everything by himself and in one day no less, he called around to his friends to find some help. This definitely does not meet the qualification for being professional movers. He was able to contact two of his friends to come and help, both of whom never did this type of work before. Of these two,

3

one walked off the job and the other had to leave at 5:00 PM, he only gave one-hour notice of this, and the job was still unfinished and didn't get completed at this destination location until approximately 8:00PM (the sun was setting). This is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

Since professional movers were not provided at the destination location, the unloading itself was delayed several hours in order to find someone, anyone to help with the move. This is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

During the unloading process, the eighteen year-old boy was distracted throughout the day by making and receiving phone calls to handle his car accident issues. This is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

Upon opening the truck, it was immediately obvious that several items were smashed. The driver only said that these items should have been crated, no other concern, and it was his job (he was the original driver at the initial location) to see to it that all items were placed into the truck properly to withstand the truck vibrations of an over 3,000 mile transport. This is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

The driver stayed with the truck and unloaded my personal belongings, upon which I was with him sorting out the items to be stacked with more ease. The "boys" were moving the items into the storage unit during this time. When I went into the storage unit, I found that **light fragile boxes (sticker marked) were on the bottom** with heavier boxes stacked on top of them, boxes were upside down (boxes had arrows on them for placement purposes), etc. I then informed the driver who chose not to correct the situation. I called the contact number again, and again no response. This is not the work of professional movers. This is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

Due to the failure of Mayflower to provide professional movers, I was forced to move boxes, to reorganize the storage bin, to actively supervise the boys, all day long. These are services I paid for in full and did not receive. I am the client, the paying client, the client with a bad back due to a spinal injury, and with other complications, who was forced by the circumstances to do the job that was already paid for. This is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

The driver, the eighteen year-old boy and his two friends took a break during the unloading, while I was afforded none. One of the friends walked off the job after they all took the 45 minute break.

4

I provided at least four organized shelving units to place the lighter and fragile boxes for protection, and a fifth would have been provided except that the 4 poles for this shelving unit were missing from the truck. This was done because the boys were still stacking the boxes improperly.

The unloading at Nashua, New Hampshire was completed at approximately 8:00PM, and unloading still had to take place in Chelmsford, Massachusetts. The driver and I both put calls into Mayflower for more movers because only the driver and the eighteen year-old boy were left to unload in Chelmsford, no response to either of us. The eighteen year-old boy put calls out to his friends again, and two different friends of his were able to help with the unloading, both of whom never had any professional mover training and do not meet the qualifications of a professional mover.


DESTINATION #2:  Chelmsford, Massachusetts 01824—June 8, 2008
                 3 Julio Street

The driver drove the Mayflower truck from Nashua, New Hampshire to Chelmsford, Massachusetts, and the eighteen year-old boy arrived with two of his friends. Again, the driver stayed with and unloaded the truck, and the boys moved my personal belongings from the truck into the house. As stated above, the eighteen year-old boy does not qualify as a professional mover due to his lack of training and experience, and his two friends have never had any professional mover training nor experience. Due to the lack of professional movers, I was still forced to actively supervise the boys and move boxes as well. This is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

Due to the short time frame and lack of professional movers, and urgency of the driver, there was no allotted time to check anything for damages other than the obvious, and there was plenty. There were several items missing as well as much damage to my furniture, both metal and woods, including designated high value items. These damages include, but are not limited to:

- REFRIGERATOR, HIGH VALUE: damage inside and out. Broken metal shelf with dents inside the refrigerator, and dents outside on both sides.
- PILATES REFORMER, HIGH VALUE: the frame was gouged.
- ANTIQUE WOODEN CARVED DRAGON CABINET, HIGH VALUE: bottom of one cabinet door broken.
- THREE HAND-PAINTED SCREENS, HIGH VALUE: the top corner of one was gouged, and the other two were marred.
- ASIAN 5 PIECE BUREAU SYSTEM, HIGH VALUE: scratched on edging surfaces and corners, and was marred; plus, 2 sets of siding doors missing and the hardware, and this is not replaceable.
- TWO HAND SCULPTED FLOOR LAMPS WITH MATCHING FLOOR VASE,

5

HIGH VALUE:  one lamp smashed, the other one was broken and the floor vase is missing.
- TWO COLUMN FLOOR LAMPS, HIGH VALUE:  one broken.
- BLACK DESK:  gouged and scuffed.
- NEW BLACK TWO DRAWER SYSTEM:  scratched and scuffed.
- TWO SMALL WHITE METAL CABINETS:  dented.
- TWO LARGE BLACK FILING CABINETS:  dented.

I was given a binding estimate of $8880.16 for the entire move, which I paid for in full by credit card on May 27, 2008, prior to commencement of the move.  In addition, I have Full Replacement Value level of carrier liability with a declared value on my shipment of $75,000 that has a $1,000 deductible (on Estimate/Order for Service form), and a given total shipment weight of 14,880 pounds.  Also, ten high value items were identified to Mayflower and these ten items were plainly so marked.  The replacement rate for high value items is not less than $100 per pound per article, and the non-high value items replacement rate is based on restoration, replacement in kind, or cost for replacement in kind (from Estimate/Order for Service form).

Since I do not possess an industrial scale, I do not have the weight of the above items readily available.  I am, however, in the process of determining what the weight of these, or reasonably similar, items are in order to determine their cost for replacement.  Once I have this information, I will forward it to you.

Because I did not receive the services I had already paid for, I was forced to perform over 15 hours of continual work in order to protect my personal belongings.  The above damages and my being forced to perform physical labor continually for over 15 hours is contrary to and failure to provide the professional services and expertise for which Mayflower was hired.

In short, Mayflower was fully paid and Mayflower blatantly did not uphold its end of the contract.  Mayflower is a professional moving company and was specifically hired for the service of professional expertise in moving my household from start to finish. Mayflower is responsible for full restitution on the services of the contract, which is $8,880.16 plus credit card interest on this value and the cost for replacement of the damaged items.  In addition, Mayflower is responsible for full restitution in failing to perform the contract for which services were fully paid as this is a fraudulent practice.  I am aware that in Massachusetts fraudulent business practices are three times the damages sustained, which is $26,640.48 plus three times the credit card interest on the binding estimate value plus three times the cost for replacement of the damaged items.  The total that Mayflower is responsible for on failure to perform the services fully paid for is $38,520.64 plus three times the credit card interest on the binding estimate value plus three times the cost for replacement on the damaged items.

In addition to the above failures to perform, Mayflower is also responsible for the significant injury I sustained while doing Mayflower's job. The injury was so significant that I had to seek medical attention, and I was diagnosed with right elbow tendonosis, lateral epicondylitis, and crucial segmental joint dysfunction. I am still undergoing treatment. The injury is extremely painful and debilitating even unto the present day.

Since I am right handed, and the injury is to my right arm, I have been, and continue to be, prohibited from working. Because I have been prohibited from working, damages due to this injury includes the injury itself, on-going medical treatment, and continual loss of income. Also, this excruciating experience increased an already stressful situation and magnified pre-existing physical complications.

I am an artisan, and I work with my hands, which means that the ability to use my arms and hands is absolutely required for me to work. This injury is significant and was caused by Mayflower's failure, therefore, Mayflower is responsible for full restitution in causing the injury, on-going medical treatment, the continuing loss of income due to the inability to work, and for the continuing pain and suffering. I am presently in the process of reasonably estimating this value, and I will forward it to you once I have the estimate.

Also, once everything was moved, the driver had me sign a document, which he said was to verify that he delivered my personal belongings only, and not an indication that the belongings had been inspected. He said my signature was only to prove that he did his job. I did sign the document and added that my signature represented delivery only without inspection. The driver did not provide me with a copy of this document, and said that it would be mailed to me. In referencing "Your Rights and Responsibilities When You Move" booklet, this document must have been the bill of laden referred to in the booklet. I have not received the bill of laden nor any other correspondence or communication, and, therefore, I do not have the bill of laden or the order number.

Thank you for your attention to this matter. You can reach me at the address and phone number provided below.

Sincerely,

Ca`ryna Bowman
3 Julio Street
Chelmsford, Massachusetts 01824
(978) 944-1227

EXHIBIT B

May 4, 2011

Mr. Pat Larch, President
Mayflower Transit, LLC
One Mayflower Drive
Fenton, MO 63026

Dear Mr. Larch,

I am writing to you under the provisions of Massachusetts General Laws, Chapter 93A, the Consumer Protection Act.

I am requesting relief as outlined in that statute for the sum of $50,000 because your company has refused to acknowledge its breach of contract after having been paid in full, and, through prior efforts, has refused to make a good faith settlement offer for its breach of contract, my time and effort, and damages it has caused to my personal property.

This letter is being sent to you by overnight mail, and you shall receive it on May 6, 2011.

Mayflower was hired as a well-known professional moving company to provide professional services and expertise for the transport my personal belongings from North Hollywood, California to Nashua, New Hampshire and to Chelmsford, Massachusetts.

Although Mayflower did provide experienced professional movers at the initial pickup point in North Hollywood, California, Mayflower did not provide experienced professional movers at the delivery points in Nashua, New Hampshire nor in Chelmsford, Massachusetts. In addition, Mayflower damaged my personal belongings in the process.

The full cost of the contract was $8,880.16 inclusive of the Full Replacement Value Option of Carrier Liability at $75,000, fifteen (15) hours of my time and effort to supervise your one 18 year-old inexperienced mover and his personal friends and re-working their work and in physically moving my personal belongings at my time rate of $125 per hour ($1,875), and damages to my personal belongings to adequately repair (approximately $28,650) and replace (approximately $10,000) the damage done by Mayflower. Thus, the total relief requested for Mayflower's willful and knowingly breach of contract, my time and effort, and damages to my personal property is $50,000.

Enclosed is a copy of the original letter, dated March 4, 2009, which describes in detail the services paid for in advance, the dates and locations for pick-up and delivery, and the unfair and deceptive acts and practices of Mayflower Transit, LLC ("Mayflower").

Since Mayflower's fraudulent business practices were well within your control, they were obviously deliberate, methodical and unconscionable.

These acts and practices are unlawful by Section 2 of Chapter 93A, which declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce unlawful. In addition to violating the contract under which Mayflower was hired, Mayflower has also violated the inherent good faith and fair dealing requirement that applies to all contracts.

Under the provisions of Section 9 of Chapter 93A, you are being provided with the opportunity to make a written offer of settlement to this claim within 30 days, which is to be received by me no later than June 4, 2011.

If you fail to make a good faith offer of settlement in response to this demand letter, in addition to the original damages and the unfair or deceptive acts or practices, Section 9 of Chapter 93A provides for triple damages, which is $150,000, and attorney's fees and costs.

Please respond with a good faith settlement offer to this Chapter 93A demand letter for $50,000 to be received by me at the address given below no later than June 4, 2011.

Thank you.

Sincerely,


Ca`ryna Bowman
3 Julio Street
Chelmsford, Massachusetts 01824
(978) 944-1227

2

EXHIBIT C

# LOONEY & GROSSMAN LLP
## Attorneys at Law

Wesley S. Chused
Direct Line: 617.235.8651
Email: wchused@lgllp.com

101 Arch Street
Boston, Massachusetts 02110-1112
Telephone: 617.951.2800
Telecopier: 617.951.2819

June 4, 2011

**VIA E-MAIL – jstjames@stjames-legal.com**
**and FIRST CLASS MAIL**

Ca'ryna Bowman
c/o Justin St. James, Esq.
The Law Office of Justin St. James
P.O. Box 5096
Andover, MA 01810-0823

Re:    **Mayflower Transit, LLC**
       **Order No. M-1096-98-8**

Dear Ms. Bowman and Mr. St. James:

I represent Mayflower Transit, LLC ("Mayflower"), of Fenton, Missouri. This is in response to Ms. Bowman's May 4, 2011 letter to Mr. Pat Larch, President of Mayflower, wherein she asserted a demand purportedly under Mass. Gen. Laws c. 93A. As a preliminary matter, I was very disappointed to receive Mr. St. James' e-mail yesterday morning denying my request for a two-week extension of time to respond to Ms. Bowman's May 4, 2011 letter, especially considering the fact that my review of the file indicates that Ms. Bowman appears to have been the cause of extraordinary delays in furnishing information to Mayflower pertaining to her purported claim. In any event, without admitting that Ms. Bowman's May 4, 2011 letter constitutes a proper or valid claim under Chapter 93A, and expressly denying that it does, Mayflower responds as follows.

Ms. Bowman's claim arises directly and exclusively from Mayflower's transportation of her household goods shipment in interstate commerce from North Hollywood, California to Nashua, New Hampshire and Chelmsford, Massachusetts on May 30, 2008 pursuant to the terms and conditions in Mayflower's governing Bill of Lading. As indicated in the Bill of Lading, the shipment was transported in accordance with and subject to Mayflower's tariffs, rules and classifications in effect at that time. According to Mayflower's records, the shipment was delivered to Ms. Bowman on June 8, 2008. Mayflower has no record of ever having spoken with Ms. Bowman or having received any correspondence from her until Mayflower received Ms. Bowman's letter dated March 4, 2009, many months after the delivery, as described below.

**Looney & Grossman LLP**
**Ca'ryna Bowman**
**c/o Justin St. James**
**June 4, 2011**
**Page 2**

The bill of lading for Ms. Bowman's shipment indicates that she selected Full Value Protection in the amount of $75,000. In accordance with Mayflower's bill of lading and tariff, and as explained in the *Your Rights and Responsibilities When You Move* booklet Ms. Bowman received prior to the move, if any article is lost, destroyed or damaged during the move, Mayflower, at its option, may either (1) repair the article to the extent necessary to restore it to the same condition in which it was received or pay for the cost of repairing such article; (2) replace the article with an article of like kind; or (3) pay Ms. Bowman for the cost of a replacement article at the current market replacement value. If Mayflower were to pay the full replacement value, then it would be entitled to take possession of the article for salvage.

Mayflower's Household Goods Descriptive Inventory for Ms. Bowman's shipment shows there were no exceptions or notations of lost, damaged or missing articles at the time the shipment was delivered on June 8, 2008. Moreover, no lost, damaged or destroyed articles identified in Ms. Bowman's March 4, 2009 letter; nor did she assert a demand in that letter for a specified or determinable amount of money for any lost, damaged or destroyed articles.

Nonetheless, in response to Ms. Bowman's March 4, 2009 letter, Mayflower promptly acknowledged and undertook to investigate her "claim" as best and as promptly as possible under the circumstances. Mayflower tried to arrange for the inspection of various articles alleged to have been damaged during the move and made numerous attempts to arrange for inspectors to visit Ms. Bowman and inspect the articles to ascertain the scope and extent of the claimed damage. However, extraordinary delays were caused by Ms. Bowman's schedule and her failure to cooperate with Mayflower in that regard. Ultimately, Mayflower was able to complete its review and investigation of Ms. Bowman's claim, and by letter dated April 1, 2010 (copy enclosed) Mayflower communicated a total (net) settlement offer of $2,078.96 (after deduction of a $1,000 deductible) to Ms. Bowman, based upon her release of her shipment at Full Value Protection of $75,000 with a $1,000 deductible. With that April 1, 2010 letter, Mayflower enclosed a release (also enclosed herewith) for Ms. Bowman's signature, which she never signed or returned to Mayflower. ***Over one year later***, Ms. Bowman sent her May 4, 2011 demand letter to Mayflower to which this letter responds.[1]

Although Ms. Bowman now demands $50,000, purportedly under Mass. Gen. Laws c. 93A, it is unclear from her May 4, 2011 demand letter how she arrives at that figure. It seems to be just a round number pulled out of thin air. What is the basis for this number? Mayflower's legal liability to Ms. Bowman pursuant to the interstate household goods Bill of Lading is $2,078.96, as mentioned above and as articulated in Mayflower's April 1, 2010 letter. She is not legally entitled "approximately $28,650" for alleged damages to her "personal belongings" for the reasons already mentioned; it is unclear what her "$10,000" damage claim is for; and, if Ms. Bowman is claiming $8,880.16 for a refund of the "full cost of the contract," which is also unclear, there is no legal or other basis on which Mayflower is obliged to refund its freight

---

[1] Ms. Bowman's extraordinary lack of attention to this matter and delay in asserting her present "claim" make it all the more perplexing that you would not accommodate Mayflower's and my request for a modest two-week extension of time for this response.

Looney & Grossman LLP
Ca'ryna Bowman
c/o Justin St. James
June 4, 2011
Page 3

charges, or for any claimed item of damage other than those identified in Mayflower's April 1, 2010 letter. All other claims of Ms. Bowman – whether for breach of contract, negligence, Ms. Bowman's "time and effort," "significant injury," "medical costs for treatment of the injury," "loss of ability to work and loss of income" or any other types of alleged damages, including damages under Chapter 93A – are preempted as a matter of federal law by the Carmack Amendment to the ICC Termination Act of 1995. *See* 49 U.S.C. § 14706.

Under the circumstances, Mayflower (1) denies that Mass. Gen. Laws c. 93A is applicable; (2) denies it committed any unfair or deceptive trade practice even if Chapter 93A were applicable; and (3) repeats its April 1, 2010 offer of $2,078.96 in full and final settlement of all of Ms. Bowman's claims.

Mayflower would prefer to avoid the costs and expenses of litigation and hopes to settle this matter amicably. If Ms. Bowman agrees to the above settlement proposal, please have her sign and return to me the enclosed release document and I will arrange for the issuance of a settlement check. In all other respects Mayflower denies Ms. Bowman's claims.

Very truly yours,

Wesley S. Chused

WSC/ldo
Enclosures



**MAYFLOWER**
TRANSIT

Mayflower Transit, LLC
One Mayflower Drive
Fenton, MO 63026-1350

April 1, 2010



Chris & Caryna Bowman
3 Julio Street
Chelmsford, MA 01824

Re: Mayflower Transit Order No.: 1096-98-8

Dear Chris and Caryna Bowman,

We have completed our review of your claim and our settlement is outlined below.

| ITEM NO. | DESCRIPTION | MAYFLOWER'S SETTLEMENT POSITION | AMOUNT |
|---|---|---|---|
| | Refrigerator | Per repair estimate. | $ 650.00 |
| | Carved dragon cabinet | Per repair estimate. | $ 270.00 |
| | Hand painted screens x 3 | Denied. Not made available to our third party specialist. | |
| | Asian five piece bureau | Denied. The paperwork reveals that you signed the inventory control form waiving the right to check off each item at delivery. | |
| | Hand sculpted floor lamps and vase | Cash allowance for one lamp made available for inspection. The second lamp and vase are denied. The paperwork reveals that you signed the inventory control form waiving the right to check off each item at delivery. There are no notations on the paper work indicating a broken lamp taken by the van operator. | $ 500.00 |
| | Column floor lamps x 2 | Cash allowance in lieu of documentation to substantiate the value. | $ 1,000.00 |
| | Black desk | Paid as claimed. | $ 139.00 |
| | Black two drawer system | Paid as claimed. | $ 120.00 |
| | White metal cabinets x 2 | Paid as claimed. | $ 79.98 |
| | Large black file cabinets x 2 | Paid as claimed. | $ 319.98 |

*Page 2*

| | | |
|---|---|---|
| | Pilates reformer | Denied. This item was moved again before Mayflower was given the opportunity to inspect and confirm new transit damage. |
| | Asian hand painted piano desk with glass top | Denied. This claim did not meet the nine month filing period. The filing period expired on March 9, 2009 and the claim was not received until April 15, 2009. |
| | Asian hand painted credenza | Denied. This claim did not meet the nine month filing period. The filing period expired on March 9, 2009 and the claim was not received until April 15, 2009. |
| | Asian chairs x 2 | Denied. This claim did not meet the nine month filing period. The filing period expired on March 9, 2009 and the claim was not received until April 15, 2009. |
| | Black lacquer armoire | Denied. This claim did not meet the nine month filing period. The filing period expired on March 9, 2009 and the claim was not received until April 15, 2009. |
| | Black lacquer kidney shaped coffee table | Denied. This claim did not meet the nine month filing period. The filing period expired on March 9, 2009 and the claim was not received until April 15, 2009. |
| | Black lacquer sofa table | Denied. This claim did not meet the nine month filing period. The filing period expired on March 9, 2009 and the claim was not received until April 15, 2009. |
| | Black lacquer high back chairs x 4 | Denied. This claim did not meet the nine month filing period. The filing period expired on March 9, 2009 and the claim was not received until April 15, 2009. |
| | Italian lamps (four different styles) | Denied. This claim did not meet the nine month filing period. The filing period expired on March 9, 2009 and the claim was not received until April 15, 2009. |

*Page 3*

| | | | |
|---|---|---|---|
| | Bathroom vanity x 3 | Denied. This claim did not meet the nine month filing period. The filing period expired on March 9, 2009 and the claim was not received until April 15, 2009. | |
| | Drafting table | Denied. This claim did not meet the nine month filing period. The filing period expired on March 9, 2009 and the claim was not received until April 15, 2009. | |
| | Oak storage cabinet | Denied. This claim did not meet the nine month filing period. The filing period expired on March 9, 2009 and the claim was not received until April 15, 2009. | |
| | | **Total cash settlement** | **$ 3,078.96** |
| | | **Less deductible** | **$ 1,000.00** |
| | | **Total amount payable** | **$ 2,078.96** |

The total value of your claim is $3,078.96. However, because you chose to release your goods at Full Value Protection, with a $1,000.00 deductible, the deductible amount must be subtracted from the settlement. The net amount payable to you is $2,078.96.

Enclosed please find two copies of the Release of All Claims. Please execute both copies of the Release. Retain one copy of the Release for your records and return the other copy in the prepaid envelope provided. Upon receipt of the executed Release, I will immediately send a settlement check made payable to Caryna Bowman in the amount of $2,078.96

Thank you for your patience and cooperation.

Sincerely,


Melanie Hartman

## RELEASE OF ALL CLAIMS

**KNOW ALL MEN BY THESE PRESENT,** that the undersigned, Caryna Bowman ("Shipper"), in consideration of the payment of the sum of $2,078.96 to be paid upon receipt of this executed release, the receipt of which is hereby acknowledged, for herself and for her executors, administrators and assigns does hereby release, acquit, and forever fully discharge Blue Chip Moving & Storage, Inc., VIP Transport, Inc., and Mayflower Transit, LLC ("Mayflower") and their respective successors, predecessors, affiliated Agents, and assigns from any and all claims, damages, actions, demands, causes of action of every kind and nature, or rights that she now has or claims to have against any party released hereby on account of or in any way emanating from or connected with any dealings and transactions, whether known or unknown, foreseen or unforeseen, existing or claimed to exist, or which can hereafter arise related to the handling, dealing, delivery, storage, or transportation of the personal property of Shipper from California to New Hampshire, under Mayflower Order #1096-98-8 or arising from facts, events, occurrences, happenings, or transactions underlying, resulting from, connected with or related to said handling, dealing, delivery, storage, or transportation of such personal property, including any and all claims related to negotiation and/or settlement of the undersigned's claim for damages arising out of the handling, dealing, delivery, storage, or transportation of such personal property under Mayflower Order #1096-98-8. The check that will be forthcoming will be for $2,078.96.

Shipper hereby warrants and represents to Mayflower that she is solely entitled to receipt of the payment to be made by Mayflower with respect to the claim. Shipper hereby agrees that in the event that any claim, demand or suit should be made or instituted by any other person or entity, against any person or entity released hereunder with respect to the claim for damages, specifically including any subrogation claim asserted by any third party insurance carrier, Shipper, will indemnify, defend and hold harmless any person or entity released hereunder against any such claim, suit, demand or judgment entered with respect thereto, including expenses of investigation, litigation, attorney's fees and costs.

It is acknowledged that the payment aforesaid is in full satisfaction, extinguishments, and bar of the claims and causes of action filed or to be filed and that all agreement and understandings of the parties are fully and completely expressed herein.

It is understood and acknowledged that said payment is made in consequence of a claim for damages having been asserted by Shipper and is in compromise thereof and said payment is not to be construed as an admission of liability on the part of any party hereby released as a result of occurrences above set forth and this Release of All Claims shall never be treated as an admission of liability or responsibility at any time for any purpose.

IN WITNESS WHEREOF, the undersigned, Caryna Bowman, has hereunto executed this Release of All Claims as of the _____ day of _____, 2010.

WITNESS:

_____        _____
                                          Caryna Bowman